# Schuessler *v*. Hatchett *et al.*

### Bill in Equity for Specific Performance.

1. *Specific performance; when will not be decreed.*—In 1854, S. gave a writing to L. & N. acknowledging the receipt of $200 in part payment of "ten acres of land," sold by S. to L. & N. at $700, the writing also stating "the balance of the money due me, is to be paid when I can give them satisfactory titles, which I bind myself and my heirs to do." This writing was attested by two witnesses. Shortly afterwards L. & N. entered upon ten acres of land of which Schuessler was in possession, and occupied and used it until the year 1871, when they sold the fences and left the land vacant, and Schuessler re-entered. Although Schuessler could not produce a satisfactory paper title, his claim was not unfounded, and no fraud was charged against him. In the year 1872, the property having increased in value to $2,700, the representatives of L. & N., who had died in the meantime, tendered S. $500, or that sum and one year's interest, for the land, but did not tender a conveyance. S. refused, unless they would pay interest, or the value of the use and occupation, which was shown to be $150 per annum. Thereupon the heirs and representatives of L. & N. filed their bill to compel specific performance. *Held:*

[Schuessler v. Hatchett et al.]

The purchasers had as beneficial use of the land as if a conveyance had been made ; and after fifteen years undisturbed use and occupation, it was not equitable to compel S. to part with the land, which had greatly increased in value, upon payment to him of only the principal of the purchase-money, without interest or compensation for the use and occupation.

2. The fact that a small portion of the purchase-money was paid, did not alter the case, and complainants only offering the principal and one year's interest, and refusing to pay for the use of the land, and not offering to do what the court might consider ought to be done, their bill ought to be dismissed.

APPEAL from Montgomery Chancery Court.

Heard before Hon. HURIOSCO AUSTILL.

This was a bill filed by the appellants, the administrator and heirs of Julius Norton and Henry Lee, deceased, against the appellee, Schuessler, to compel specific performance of a contract to convey certain lands, made with said Lee and Norton in their life time, the facts of the case being thus :

In 1854 appellant, Schuessler, being in possession of land adjoining the city of Montgomery, entered into a contract for the sale of ten acres to Lee and Norton, of that city, and executed to them a writing, as follows :

" Received, Montgomery, April 6, 1854, of Lee & Norton, a negro man by the name of Jack, valued at two hundred dollars, in part payment of ten acres of land sold by me to Lee and Norton at seven hundred dollars, and the balance of the money due me is to be paid when I can give them satisfactory titles, which I bind myself and my heirs to do." This was signed by Schuessler and attested.

Within three to five months afterwards, Lee and Norton took possession of a parcel of ten acres of land, which had been previously in the possession of Schuessler, and retained the possession and use of it for pasturage until about the beginning of the year 1871; when, according to the testimony, the fence that was around the land was sold by them, the boards and posts pulled down and carried away, and the land left vacant; after which Schuessler retook possession of it, and has ever since retained it.

The negro mentioned in the receipt was an old man; the land was used for the pasturage of cattle ; and the only testimony as to the value of the use of it, is, that it was worth annually, on an average, about $150, (which is, doubtless, an excessive valuation,) and that its total value when the suit was brought in April, 1873, owing to the improvement and enlargement of the city, was about $2,500.

Both Lee and Norton died in 1871, Norton in September. In January, 1872, a son-in-law of Norton, on behalf of the estates of both Lee and Norton, offered to Schuessler to pay him $500, or $500 and one year's interest thereon, for the

land, as the balance of the price due for it, and tendered to him the money; which he refused to take unless they would pay him interest for the time they had had possession, or the value of the use and occupation; but no conveyance thereof was prepared and tendered to him to be executed; and he remained in possession of the land. This was the first action taken on either side with a view to perfect the title. About fifteen months afterwards this suit was brought by the administrators and heirs of both Lee and Norton, by a bill for a specific performance of the contract. And the Chancellor decreed that, upon plaintiffs' paying into court $500, without interest, Schuessler should execute to them quit-claim deeds.

ELMORE & GUNTER, for appellant.

SAYRE & GRAVES, and D. CLOPTON, contra.

MANNING, J. (after stating facts.)—The writing signed by Schuessler says nothing about possession being delivered of the undescribed ten acres. Although it may be inferred from the fact that the old negro man was then given in part payment, and from the further fact that possession was, in a few months afterwards, taken by Lee and Norton without objection, that they did not, in doing so, violate the contract as it was understood by the parties, yet it was not stipulated in the writing that the vendees should have possession. But these facts and the further one that the land is not described in the writing, which is quite defective as a title, tend to prove that the parties considered the transaction as a cash sale, and expected it to be completed in some short time thereafter. An informal and meagre memorandum, insufficient in itself, and signed by only one of the parties, could not have been intended, when made, to continue long the only evidence of their respective rights. There is no pretense that Schuessler falsely claimed that the land was his, although he could not produce satisfactory paper titles; and by virtue of their agreement with him, Norton and Lee obtained the possession and had the beneficial use of the property for a period of fifteen years, with as much advantage as if they had received from him a perfect deed, conveying the legal title.

Is it allowable in a court of equity and in a suit for specific performance of a contract, in respect to which the court has a certain legal discretion, to insist, that under such circumstances, complainants are entitled to a decree for a conveyance, because the writing signed by defendant says—" the

*balance of the money due me*, is to be paid, when I can give them satisfactory titles, which I bind myself and my heirs to do"? What is "the balance of the money due" to him then, according to equity principles, from vendees who have had uninterrupted enjoyment, for a long time, of the premises bargained for?

Sugden, in his work on Vendors and Purchasers, says on this subject: "If no time be limited for the performance of the agreement, and the purchaser be let into possession of the estate, he must pay interest on the purchase-money from that time."—(p. 795).

In *Fludyer v. Cocker*, (12 Ves. 25,) part of a farm had been allotted, in lieu of tithes, to an impropriator, who agreed to sell it to the owners of the farm, for a price to be paid at a short day, (which was named,) *on a good title being made and executed;* and the possession remained in the purchaser undisturbed, who paid no tithes; but for want of an award, by commissioners who were to make the allotment, twenty-seven years elapsed before a good title could be made. Sir William Grant, Master of the Rolls, ordered that the purchaser pay interest from the day fixed for completing the contract. That learned equity judge said: "At law the purchaser could not have the right to the estate, nor the vendor to the money, until the conveyance was executed. But this has nothing to do with the mode in which this court executes the agreement. The purchaser might have said he would not have any thing to do with the estate, until he got a conveyance. But that is not the course he took. He enters into possession. * * He proceeds upon the supposition that the contract will be executed, and, therefore, agrees that from that day, he will treat it as if it was executed."

The present case differs from the one cited, in the particular that $200 of the price was paid when the writing was signed; which might be considered as entitling the buyers to a corresponding present benefit from the property. But this could not give them a right to fifteen years enjoyment of it—and then to a conveyance of the fee-simple, after the property had greatly increased in value, upon payment of $500, balance of the principal, without any interest.

We need not consider this case in any of its other aspects. A court of equity is applied to for its decree to compel a vendor specifically to perform a contract nineteen years after it was made, in favor of purchasers, who not only do not offer to do what this court may consider ought to be done in respect to interest on the price, to compensate for their long use of the property bargained for, but who must be understood as distinctly declining to pay any interest.

[Hadley et al. v. Bryars' Adm'r.]

We think, in view of the principles which regulate the exercise of equity jurisdiction in such cases, the Chancellor erred in rendering a decree in favor of complainants; and it must be here reversed, and the bill be dismissed, at the costs of appellees in this court and in the court below.

STONE, J., not sitting.